CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* BALL AND PHILPOT.

Opinion delivered April 29, 1918.

CARRIERS—DEMURRAGE CHARGE—SWITCHING.—Under Act 193, Acts of 1907, a carrier which takes freight cars from another carrier for switching only can not collect demurrage charges from the shipper.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

Demurrage was properly charged on the cars placed on the private switch and detained beyond the time. Kirby & Castle's Digest, § 8180; 120 Ark. 572; 204 Fed. 757. Appellees misconceive the force of 243 U. S. 281. Demurrage is chargeable on privately owned cars on public tracks and on company cars on private tracks, but not on privately owned cars not in use by the railway company but being held by the private owner on his private tracks. 237 Fed. 347; 241 U. S. 55. See also 58 Pa. Sup. Ct. 154.

2. As to the amount of recovery there is no conflict. The total amount is $262.

*Taylor, Jones & Taylor,* for appellees.

No cars were ordered from or furnished by appellant to appellee. All were ordered from and furnished by the St. Louis, Iron Mountain & Southern Railway Company. The only service performed by appellant was the switching of cars to the spur track of appellees. The demurrage statute is operative only as between the railroad from which the cars are ordered and the shipper. If any demurrage was due it was to Iron Moun-

·tain Railway ·Company and not to appellant. K. & C. Dig., § 8180.

The decree is right and should be affirmed.

HUMPHREYS, J. This is a suit by appellants against appellees to recover demurrage charges on account of the detention of cars overtime by appellees. The total amount claimed was $273.

·Appellees disclaimed the indebtedness and denied that they ordered any cars from, or that any cars were furnished by, appellants to appellees. They asserted that all the cars ordered by them were ordered from and furnished by the St. Louis, Iron Mountain & Southern Railway Company; that appellant switched the cars thus ordered from an interchange track connecting the tracks of the two companies to appellee's private industrial spur line, which was connected with appellant's main line or track, but in which appellants had no interest, and over which no control; that for the switching service appellants were paid $3 per car by the St. Louis, Iron Mountain & Southern Railway Company, which amount was collected by the last named company from appellees.

The court heard the case upon the pleadings and evidence, and disallowed the demurrage items, from which judgment of disallowance an appeal has been prosecuted to this court.

The facts are as follows: The Chicago, Rock Island & Pacific Railway Company and the St. Louis, Iron Mountain & Southern Railway Company are connected in the town of Benton by an interchange track owned by them jointly. About one mile from where the interchange track intersects the main line of the Chicago, Rock Island & Pacific Railway Company, a private industrial spur track, owned and controlled by appellees, also intersects the main line of the Chicago, Rock Island & Pacific Railway Company. The cars upon which a demurrage charge is claimed were ordered by appellees from the St. Louis, Iron Mountain & Southern Railway Company. That company placed them upon the inter-

change track and took receipt for them from the Chicago, Rock Island & Pacific Railway Company. By private agreement between the companies the Chicago, Rock Island & Pacific Railway Company paid the St. Louis, Iron Mountain & Southern Railway Company fifty-five cents per day for the cars through its Chicago office. The Chicago, Rock Island & Pacific Railway Company switched the cars from the interchange track to the private track of appellees to be loaded with gravel out of appellees' gravel pit situated near the private industrial line, and when they were loaded, switched them back to the interchange track. For the switching service, the Chicago, Rock Island & Pacific Railway Company received $3 per car from the St. Louis, Iron Mountain & Southern Railway Company, which latter company collected the $3 switching charge per car from appellees. When the loaded cars were returned to the interchange track, the freight and switching charges were paid and a bill of lading was issued to the appellees by the St. Louis, Iron Mountain & Southern Railway Company. The cars were billed out by the agent of the St. Louis, Iron Mountain & Southern Railway Company to points on its line. While there was some dispute as to the amount of the demurrage charged, the correct amount established by the evidence is $262.

It is insisted by appellants that demurrage may be charged on company or publicly owned cars placed on private tracks and detained there beyond free time allowed for loading or unloading. This proposition of law is not gainsaid by appellee, but it is contended by them that the demurrage statute is operative only as between the railroad from which the cars are ordered and the shipper. The demurrage statute authorizing the rule contained in Arkansas Standard Distance Tariff No. 5, under which this suit was brought, is section 6, Act 193, Acts 1907, and is as follows:

"A shipper, on whose order a car or cars have been placed for loading, shall be allowed forty-eight hours for the loading of such car or cars, computing time from 7

o'clock A. M., the day after such car or cars have been placed subject to the order of the shipper, and thereafter a demurrage charge of not more than five dollars per car per day, or fraction of a day, may be assessed and collected on all such cars as have not been tendered to the railroad company with shipping instructions within said forty-eight hours; provided, however, that, should the shipper fail to begin loading within forty-eight hours after the expiration of free time, the railroad company shall consider the car or cars released, and may assess and collect ten dollars on each car, covering the demurrage then due.    Provided, that such delay be not caused by unavoidable accident or strike, and said cars be at once released.

"Railroad companies shall not be compelled to furnish cars for future shipments to parties in default as to the payment of demurrage charges herein last provided for.  If, after placing the car or cars required by this act, the railroad company shall, during or after free time, temporarily remove all or any of them, or in any way prevent, obstruct or delay the loading of same, the shipper shall not be chargeable with the delay caused thereby.

"When, by reason of delay or irregularity on the part of the railroad company in filling orders, cars are bunched, in excess of the ability of the shipper to load, as indicated in his application, the shipper shall be allowed separate and distinct periods of free time within which to load the car or cars specified in each separate application."

We are inclined to the view that appellees' construction of the statute is correct.  The wording of the first part of the section indicates that the statute is dealing with the initial carrier from which the shipper ordered the cars for shipping purposes.  This conclusion is confirmed in the progress of reading the section because later on the railroad company, to which the cars should have been delivered with shipping instructions within forty-eight hours, is authorized to assess and collect de-

murrage charges for detention of them beyond the time allowed for loading. The statute applies to carriers participating in the haul, as distinguished from carriers switching the cars preparatory to the haul. Under the facts in this case, the removal of the cars from the interchange track to the spur, and back to the interchange track from the spur, was strictly a switching operation and not a part of the haul. The payment for the work was paid as a switching charge, and not as freight upon the cars. The Chicago, Rock Island & Pacific Railroad Company did not issue bills of lading for the cars as they stood on the spur track. The bills of lading were issued by the St. Louis, Iron Mountain & Southern Railroad Company after they reached the interchange track, loaded and ready for the haul. The cars were ordered from the St. Louis, Iron Mountain & Southern Railway Company by appellees and shipped out over its line under contract with that company. The Chicago, Rock Island & Pacific Railway Company did not participate in the shipping contract or the haul. The only part taken in the transaction by the Chicago, Rock Island & Pacific Railway Company was to switch the cars, for a specified price, as agent for the St. Louis, Iron Mountain & Southern Railway Company. It is true that the Chicago, Rock Island & Pacific Railway Company receipted the St. Louis, Iron Mountain & Southern Railway Company for the cars when first placed on the interchange track, and paid that company fifty-five cents a day for the cars until returned to the interchange track, but the consideration for the private contract between the two companies was the payment of $3 per car as a switching charge, and there is nothing in the record from which it can be inferred that the demurrage charges were a part of the consideration to that contract. There is nothing in the statute authorizing the transfer of the right to collect demurrage charges. This right under the statute was personal to the shipping carrier.

We think the chancellor correctly construed the statute, and therefore the decree is affirmed.